## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

ELIZABETH JENNINGS,           )
                                 )
            **Petitioner,**       )
                                 )
v.                             )     **Case No. 20-CV-0486-CVE-CDL**
                                 )
TAMIKA WHITE,[1]          )
                                 )
            **Respondent.**     )

## OPINION AND ORDER

This matter is before the Court on petitioner Elizabeth Jennings's petition under 28 U.S.C. § 2254 for writ of habeas corpus by a person in state custody (Dkt. # 1). Jennings, an Oklahoma prisoner appearing without counsel,[2] seeks federal collateral review of the judgment and sentence entered against her in Tulsa County District Court Case No. CF-2016-1836. Jennings claims that trial errors and prosecutorial misconduct deprived her of her Fourteenth Amendment right to due process and a fundamentally fair trial and that she was denied her Sixth Amendment right to the effective assistance of appellate counsel. Having considered the petition, respondent Tamika White's response (Dkt. # 12), the record of state court proceedings (Dkt. ## 13, 14), and applicable law,[3] the Court denies the petition.

---

[1] Jennings presently is incarcerated at the Mabel Bassett Correctional Center ("MBCC"), in McLoud, Oklahoma. The Court therefore substitutes Tamika White, the MBCC's current warden, in place of Aboutanaa Elhabti, the MBCC's former warden, as party respondent. FED. R. CIV. P. 25(d); Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts. The Clerk of Court shall note this substitution on the record.

[2] Because Jennings appears without counsel, the Court liberally construes the petition. Hall v. Bellmon, 935 F.2d 1106, 1110 (1991).

[3] Jennings filed a reply brief more than three months after the reply deadline expired. Dkt. ## 11, 15. Because Jennings did not seek leave to file the reply brief out of time, the Court has not considered any arguments asserted in the reply brief.

## BACKGROUND

In April 2016, the State of Oklahoma ("the state") charged Jennings with one count of permitting child sexual abuse, in violation of OKLA. STAT. tit. 21, § 843.5(G) (2011),[4] and charged her husband, John Mark Jennings ("John"), with four counts of sexual abuse of a child under twelve, in violation of OKLA. STAT. tit. 21, § 843.5(F) (2011).   Dkt. # 13-11, at 45-46.[5]   In September 2016, John pleaded guilty as to all four counts and, in doing so, admitted that he sexually abused the Jennings's biological granddaughter, D.J., between December 2012, when D.J. was seven years old, and March 2016, when D.J. was ten years old.  Id. at 45-46, 95-110, 114-23; Dkt. # 13-3, at 8.[6]   Jennings's case proceeded to a jury trial in 2017.   Dkt. # 13-12, at 33.

At Jennings's trial, D.J., who was then eleven years old, and John testified that, beginning when D.J. was seven years old, John used his hands and mouth to touch D.J.'s vagina and breasts,

---

[4] In 2011, section 843.5(G) provided:

Any parent or other person who shall willfully or maliciously engage in enabling child sexual abuse shall, upon conviction, be punished by imprisonment in the custody of the Department of Corrections not exceeding life imprisonment, or by imprisonment in a county jail not exceeding one (1) year, or by a fine of not less than Five Hundred Dollars ($500.00) nor more than Five Thousand Dollars ($5,000.00), or both such fine and imprisonment. As used in this subsection, "enabling child sexual abuse" means the causing, procuring or permitting of a willful or malicious act of child sexual abuse, as defined by subparagraph b of paragraph 2 of Section 1-1-105 of Title 10A of the Oklahoma Statutes, of a child under the age of eighteen (18) by another. As used in this subsection, "permit" means to authorize or allow for the care of a child by an individual when the person authorizing or allowing such care knows or reasonably should know that the child will be placed at risk of sexual abuse as proscribed by this subsection.

OKLA. STAT. tit. 21, § 843.5(G) (2011).

[5] Unless otherwise noted, the Court's citations refer to the CM/ECF header pagination.

[6] Jennings was D.J.'s legal guardian when the abuse occurred.  Dkt. # 13-7, at 88-89, 97-98; Dkt. # 13-8, at 99.

that he placed his penis in D.J.'s hands and mouth, that he used a Polaroid camera to take nude photographs of D.J., that he gave D.J. money in exchange for sexual acts, and that he once let D.J. watch a movie depicting two people having sex. Dkt. # 13-8, at 7-12, 14-18, 22-23, 127-36, 150. D.J. testified that the abuse ordinarily occurred when Jennings was either sleeping or showering and that Jennings did not witness the abuse. Id. at 12, 14, 23.

D.J. testified that she disclosed the abuse to Jennings twice, at age seven and again at age ten. Id. at 12-13. D.J. testified that after the first disclosure she "went to DHS" and she and John were interviewed, that "it was just weird," that John remained in the Jennings's home after the interviews, and that the abuse continued. Id. at 13, 27. D.J. testified that she made the second disclosure to Jennings one day when Jennings was "taking the day care vans back to the storage,"[7] and that the abuse stopped after the second disclosure. Id. at 12-13, 23-24. On March 19, 2016, a few weeks after the second disclosure, D.J. disclosed the abuse to her therapist, Jennifer Daniell, Ph. D., Id. at 19, 30-31, 48-49. Dr. Daniell testified that she asked Jennings to join D.J. in the therapy room to confirm that D.J. had already disclosed the abuse to Jennings. Id. at 49. According to Dr. Daniell, Jennings expressed concern and asked D.J. why D.J. had not told Jennings about the abuse before. Id. Dr. Daniell testified that D.J. then "said something to the effect that I did tell you, Grandma, when I was eight years old," and that Jennings "seemed oddly unreactive." Id. Neither Dr. Daniell nor Jennings immediately reported D.J.'s disclosure to law enforcement or to the Oklahoma Department of Human Services ("DHS") child abuse hotline. Id. at 50-52. After D.J. and Jennings returned home from the March 19, 2016, therapy session, Jennings told John he had to leave the house, but Jennings then allowed John to stay in the home with D.J. for the next

---

[7] Jennings worked at a day care center at the time of her arrest. Dkt. # 13-11, at 36; Dkt. # 13-12, at 82.

week because John told Jennings that he "would have to live in [his] truck if [he] moved out" before he got his paycheck.  Id. at 139.[8]  Jennings met with Dr. Daniell on March 25, 2016, and informed Dr. Daniell, for the first time, that J.J.—D.J.'s mother and the Jennings's biological daughter—"had also made allegations that [John] sexually abused [J.J.]" and that those allegations resulted in a DHS investigation.  Id. at 52-56.  Dr. Daniell testified that Jennings reported to her that the DHS determined J.J.'s allegations were "unfounded," that DHS temporarily removed J.J. from the Jennings's home, and that DHS later approved of J.J.'s return to the home where Jennings lived with John.  Id.  Ultimately, Dr. Daniell called the DHS hotline on March 29, 2016, to report D.J.'s disclosure.  Id. at 62.  About forty-five minutes after Dr. Daniell called the DHS hotline, Jennings also called the hotline to report the abuse.  Id. at 106, 112-13.  DHS and the Tulsa Police Department jointly investigated the sexual abuse allegations, resulting in D.J.'s removal from the Jennings's home and the arrest of Jennings and John.  Id. at 93, 104-06; Dkt. # 13-11, at 36-37, 46-48.

The state also presented evidence that DHS investigated sexual abuse allegations against John more than once before the 2016 investigation.  In 2001, DHS investigated allegations that John sexually abused J.J. beginning when J.J. was six years old and continuing until she was about fourteen years old, and that Jennings failed to protect J.J. from that abuse.  Dkt. # 13-7, at 78-87, 96-97, 105-10, 124-36; Dkt. # 13-8, at 98-99.[9]  J.J., who was thirty-two years old and incarcerated

---

[8] D.J. testified that Jennings tried to protect her during the week that John remained in the house by placing D.J.'s dollhouse in front of D.J.'s bedroom door, taping to the dollhouse a handwritten warning sign ("don't come in or you would get consequences"), and waiting until John left the house to shower.  Dkt. # 13-8, at 19-20, 25.

[9] John admitted for the first time at Jennings's trial that he did, in fact, sexually abuse J.J. Dkt. # 13-8, at 143.

at the time of Jennings's trial,[10] testified that John used his hands and mouth to touch her vagina, that he forced her to have vaginal and anal intercourse when she was ten years old, that he used a Polaroid camera to take nude photographs of her and encouraged her to masturbate for the photographs, that he stopped on the side of the road once when he and J.J. were on a fishing trip and had her perform oral sex on him until he ejaculated in her mouth, and that he gave her money, candy, and gifts in return for sexual acts. Dkt. # 13-7, at 78-82. J.J. testified that she was diagnosed with a sexually transmitted disease when she was ten years old, that she disclosed the abuse to Jennings when she was twelve years old, that Jennings stated she "would take care of it," that she and Jennings stayed in the home with John, and that the abuse continued for about two more years. Id. at 82-83. J.J. disclosed the abuse to Jennings a third time, when J.J. was sixteen years old, after J.J. was admitted to a psychiatric hospital for cutting herself on her wrists and legs; this disclosure prompted the 2001 DHS investigation. Id. at 83-86, 124. As a result of the 2001 investigation, DHS confirmed the sexual abuse allegations and requested court intervention. J.J. was placed in foster care for eight months, and Jennings was told by the court that the sexual abuse allegations were confirmed and that she needed to get a protective order to keep John out of the house. Id. at 103-05, 110, 124-36; Dkt. # 13-8, at 98-99.[11] No criminal charges were filed against John relating

---

[10] J.J. testified that she was serving a 20-year prison sentence following her conviction of felony child neglect related to the death of D.J.'s younger brother, A.J., who died in a house fire in 2011. Dkt. # 13-7, at 77, 89-90

[11] Michelle Brown, the DHS investigator at the time of the 2001 investigation, testified that DHS records indicating that allegations were "[c]onfirmed, court intervention requested means that there was evidence to support the allegations that were named in the referral . . . that services would not provide safety to the child, and that [DHS was] asking the district attorney to file a deprived petition." Dkt. # 13-7, at 99, 103. Brown further testified that in 2001, the language DHS used to describe potential investigation outcomes was that "findings were confirmed, court intervention requested[,] or confirmed, services requested[,] or ruled out" and that, "at some point DHS changed that policy where the findings were substantiated or unsubstantiated" rather than confirmed or ruled out. Id. at 134.

to his sexual abuse of J.J., and Jennings and J.J. moved back in with John about two years after J.J. was returned to Jennings's custody.  Dkt. # 13-7, at 87, 96-97, 140; Dkt. # 13-8, at 107-08.  In 2011, DHS investigated possible sexual abuse involving D.J. after a doctor reported to DHS that D.J. had been diagnosed with a sexually transmitted disease.  Dkt. # 13-8, at 99-103, 108-10.  The DHS investigator interviewed D.J. and John, D.J. "made disclosures of sexual abuse," John denied the allegations, the investigator concluded that those allegations were unsubstantiated, and DHS took no further action.  Id. at 108-10.

At the conclusion of Jennings's trial, the jury found, beyond a reasonable doubt, that Jennings "willfully and maliciously" "permitted" child sexual abuse by allowing John access to D.J., when Jennings "knew or reasonably should have known that [D.J.] would be placed at risk of child sexual abuse."  Dkt. # 13-11, at 45; Dkt. # 13-12, at 55, 63.

Represented by counsel, Jennings filed a direct appeal in the Oklahoma Court of Criminal Appeals ("OCCA") raising three claims.  Dkt. # 12-1, at 1-2.  The OCCA rejected all three claims on the merits and affirmed Jennings's judgment and sentence.  Id. at 2-5.  Proceeding pro se, Jennings filed an application for postconviction relief in state district court, raising three claims.  Dkt. # 12-6, at 1-2.  The state district court denied postconviction relief, Jennings filed a postconviction appeal, and the OCCA affirmed the denial of postconviction relief.  Id. at 2-14; Dkt. # 12-8, at 1-5.

Jennings now petitions for a writ of habeas corpus, reasserting the same six claims she presented to the OCCA through her direct and postconviction appeals.

## *LEGAL STANDARDS*

A federal district court may grant the equitable remedy of federal habeas relief to a state prisoner "only on the ground that [the prisoner] is in custody in violation of the Constitution or

laws or treaties of the United States."  28 U.S.C. § 2254(a).  Thus, errors that allege violations of state law are not cognizable habeas claims because "it is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."  Wilson v. Corcoran, 562 U.S. 1, 5 (2010) (emphasis in original); see also Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").  When a petitioner presents a federal claim that falls within the limited scope of habeas review, the federal habeas statutes, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and the United States Supreme Court's federal habeas jurisprudence, strictly limit a federal court's discretion to grant habeas relief.  Two limits are relevant here.

First, as to any federal claim that the OCCA adjudicated on the merits, this Court may not grant relief unless Jennings first shows that the OCCA's decision as to that claim either (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,"[12] or (2) "was based on an unreasonable

---

[12] When § 2254(d)(1)'s framework informs a federal court's analysis, the first question for the court is whether the petitioner's claim rests on law that was clearly established by Supreme Court precedent at the time of the relevant state-court decision.  House v. Hatch, 527 F.3d 1010, 1015-18 (10th Cir. 2008).

determination of the facts in light of the evidence presented in the State court proceeding."[13] Douglas v. Workman, 560 F.3d 1156, 1170 (10th Cir. 2009) (quoting 28 U.S.C. § 2254(d)(1)-(2)). "A habeas petitioner meets this demanding standard only when he shows that the state court's decision was 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Dunn v. Madison, 583 U.S. 10, 12 (2017) (per curiam) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)). If Jennings satisfies § 2254(d)'s demanding standard, this Court may then review her federal claim de novo, i.e., without deference to the OCCA's decision. Milton v. Miller, 744 F.3d 660, 670-71 (10th Cir. 2014). But even if this Court finds that a constitutional error occurred, this Court may not remedy the constitutional error unless Jennings also "show[s] that the error had a '"substantial and injurious effect or influence"' on the outcome of [the] trial." Brown v. Davenport, 142 S. Ct. 1510, 1519 (2022) (alterations added) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

Second, as to any federal claim that Jennings did not properly present to the OCCA in accordance with state procedural rules, the procedural default doctrine bars this Court's review unless Jennings first shows either (1) cause for the procedural default and resulting prejudice or (2) that a fundamental miscarriage of justice will occur if the Court does not review the claim. Grant v. Royal, 886 F.3d 874, 892 (10th Cir. 2018); see also Davila v. Davis, 582 U.S. 521, 527 (2017) ("[A] federal court may not review federal claims that were procedurally defaulted in state

---

[13] "A state-court decision unreasonably determines the facts if the state court 'plainly misapprehend[ed] or misstate[d] the record in making [its] findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim.'" Wood v. Carpenter, 907 F.3d 1279, 1289 (10th Cir. 2018) (quoting Byrd v. Workman, 645 F.3d 1159, 1170-72 (10th Cir. 2011)). But "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010). And a federal court "must presume the state court's factual findings to be correct unless the petitioner rebuts the presumption with clear and convincing evidence." House, 527 F.3d at 1019 (citing 28 U.S.C. § 2254(e)(1)).

court—that is, claims that the state court denied based on an adequate and independent state procedural rule.").[14]  If Jennings overcomes the procedural default, the Court will review the defaulted claim de novo.  Douglas, 560 F.3d at 1171.  But, again, even if the Court finds a constitutional error it may not grant relief unless Jennings further shows that the error was prejudicial under the Brecht standard.  Davenport, 142 S. Ct. at 1524.

### *DISCUSSION*

Jennings identifies six claims in the petition:

Claim one:      "The prosecutor presented the jury panel with an impermissible hypothetical during voir dire in violation of Oklahoma Statutory Law and the Fourteenth Amendment to the United States Constitution."  Dkt. # 1, at 4.

Claim two:      "The extensive evidence of co-defendant John Jennings' sexual misconduct that was presented at [Jennings's] trial served to deny [Jennings] a reliable sentencing proceeding in violation of the Fourteenth Amendment to the United States Constitution."  Id. at 6.

Claim three:    "The district court's refusal to provide the jury with instruction-advising jurors of mandatory sex offender registration because of [Jennings's] felony conviction denied [Jennings] a reliable sentencing proceeding in accordance with the Fourteenth Amendment to the United States Constitution."  Id. at 14.

Claim four:     Appellate counsel provided ineffective assistance, in violation of Jennings's Sixth Amendment right to the effective assistance of counsel.  Id. at 16, 18.

---

[14] A state procedural rule "is independent if it is separate and distinct from federal law" and "is adequate if it is 'strictly or regularly followed' and applied 'evenhandedly to all similar claims.'"  Duvall v. Reynolds, 139 F.3d 768, 796-97 (10th Cir. 1998) (quoting Hathorn v. Lovorn, 457 U.S. 255, 263 (1982)).

Claim five:     "The trial court abused its discretion when it allowed the prosecution to ask 'stake-out' questions during <u>voir dire</u>."  <u>Id.</u> at 21 (irregular capitalization omitted).

Claim six:      "[Jennings] was denied her right to a fundamentally fair trial due to prosecutorial misconduct in violation of her due process."  <u>Id.</u> at 23 (irregular capitalization omitted).

Respondent urges the Court to deny the petition, arguing (1) that 28 U.S.C. § 2254(d) bars relief as to those federal claims that the OCCA adjudicated on the merits; (2) that the procedural-default doctrine bars relief as to those federal claims that the OCCA found procedurally barred; and (3) that some claims allege only errors of state law and thus do not present federal claims subject to habeas review.  Dkt. # 12, at 12-106.

## I.      Claims that were adjudicated on the merits (claims one, two, three, four, and five)

### A.      Improper <u>voir dire</u> hypothetical (claims one and five)

Jennings asserts that she was deprived of her Fourteenth Amendment right to due process and a fair trial because (1) the prosecutor committed misconduct by using an improper hypothetical during <u>voir dire</u> (claim one) and (2) the trial court abused its discretion by allowing the prosecutor to use the improper hypothetical over her objection (claim five).  Dkt. # 1, at 4-6, 21-23.

#### 1.      Additional facts

During <u>voir dire</u>, the prosecutor stated:

> Hypothetical.  This is not the facts of our case.  This is a weird situation where you won't hear anything about the facts of our case from myself or Mr. Smith until the evidence is before you until after the jury has been selected; okay?

> But hypothetically speaking there's a couple.  It's their anniversary. Husband/wife, girlfriend/boyfriend, whatever, and they're going to jewelry stores. They're going around town and they go to Zale's, they go to Moody's, they go to Macy's, and they go to J.C. Penney, and they go to all these different jewelry stores because he wants to get a ring for her, something special for their anniversary.  And every place they go it's not a matter of can we find something that we like, it's a

matter of we can't afford it, we can't justify it, it's too expensive, something like that.

And at the last place that they go to, this couple, the woman sees him slip a ring into his pocket.  He stole it.  The female sees the male do that and knows that he's done it, but she didn't distract the clerk, she didn't touch the ring or encourage him in any way to take it, but she sees that it happened and she knows that it happened and she says nothing and does nothing.  She doesn't notify the sales clerk who was helping them, she doesn't notify the security guard who's standing at the exit as they leave.  She gets in the car and drives him away and she doesn't call anybody to report it.  And then later that night she's wearing the ring.

In that situation, should she be punished?  Raise your hand if you think yes and leave it up.

Dkt. # 13-6, at 109-10.  Defense counsel objected, arguing that the prosecutor had posed "a stake-out question."  Id. at 110-11.  Following a bench conference, the trial court overruled the objection but advised defense counsel to "object again" if necessary.  Id. at 111-12.  The prosecutor then altered the question, asking prospective jurors if the woman in the hypothetical should not be punished, and the prosecutor then engaged in a conversation with one prospective juror, Juror S., who suggested the woman in the hypothetical may have valid reasons for not reporting the man's actions but stated that "[i]f her safety's not at risk, yeah, she should say something."  Id. at 112-13.  After asking whether any prospective jurors disagreed with her follow-up question and Juror S.'s answer, the prosecutor went on to explain, without further objection:

This case, as Judge told you, is a permitting case.  Permitting under the law means, "Authorizing or allowing for the care of a child by an individual when the person authorizing or allowing such are knew or reasonably should have known that the child would be placed at risk of sexual abuse."  It's a very long explanation for you know or reasonably should know the child is at risk of being sexually abused and you continue to allow that child to be around that person.  Does everybody understand at this point?  Raise your hand if you don't understand.

Okay.  This is very, very different than most legal concepts where we say it's illegal to affirmatively go do something.  I think we would all agree, is there anyone who disagrees, that sexually abusing a child, being the actual perpetrator of molestation, is not okay; right?  We all agree with that?

11

This is a different situation.  This is a situation where the legal concept doesn't say you did it.  It says you knew about it and allowed the child to still be around the person.  Is everyone following?

If I were to prove beyond a reasonable doubt the defendant guilty of this crime, could you affix punishment in the form of prison for something like that?  Show of hands if you could not consider prison for something like that.  I see no hands.

Dkt. # 13-6, at 113-14.  After this, the prosecutor moved on to a discussion about the range of punishment.  Id. at 115.[15]

Relying primarily on state law, Jennings challenged the prosecutor's use of the jewelry-theft hypothetical on direct appeal, framing the issue as one of prosecutorial misconduct.  Dkt. # 12-2, at 11-15; see, e.g., Robinson v. State, 255 P.3d 425, 431-32 (Okla. Crim. App. 2011) ("An attorney should not use voir dire to test prospective jurors' willingness to accept a party's theory of the case, rather than the jurors' impartiality, Black v. State, 2001 OK CR 5, ¶ 19, 21 P.3d 1047, 1058."); Kephart v. State, 229 P.2d 224, 229 (Okla. Crim. App. 1951) ("Either party has the right to ask prospective jurors pertinent questions in order to determine whether he desires to exercise a peremptory challenge.  In that connection the court should be liberal to give counsel a reasonable opportunity to discover the state of mind of the different jurors on any collateral matter reasonably liable to influence them in returning a verdict for or against either of the parties.  However[,] the attorneys are not permitted to make statements of the law and seek to get a statement in advance of the trial as to how the jurors would decide the case on a given state of facts.").

The OCCA denied relief, reasoning:

---

[15] Ultimately, defense counsel passed the jury panel for cause, and the state used one of its peremptory challenges to excuse Juror S. from the jury panel, without objection.  Dkt. # 13-7, at 52-57.

The prosecutor did not impermissibly pose a hypothetical during <u>voir dire</u> based upon the facts of the case or the law that would apply.  Nor did the prosecutor ask the jurors to prejudge the case.  The State used the challenged example as part of a broader discussion to assess whether the jurors could follow the law and convict someone for permitting a crime as opposed to actually committing it.  The trial court did not abuse its discretion in allowing the prosecutor's question because it was designed to test the jurors' impartiality, not test their willingness to accept the State's theory of the case.  <u>See</u> Rule 6, <u>Rules of the District Courts of Oklahoma</u>, Title 12, O.S. 2011, Ch. 2, App.; <u>Robinson v. State</u>, 2011 OK CR 15, ¶ 16, 255 P.3d 425, 431; <u>Black v. State</u>, 2001 OK CR 5, ¶ 19, 21 P.3d 1047, 1058; <u>Kephart v. State</u>, 1951 OK CR 33, 93 Okl. Cr. 451, 461, 229 P.2d 224, 230.  Proposition I is denied.

Dkt. # 12-1, at 2-3.[16]

In her application for postconviction relief, Jennings raised a second claim related to the jewelry-theft hypothetical, asserting that the trial court abused its discretion when it allowed the prosecutor to ask the hypothetical over Jennings's objection.  Dkt. # 12-4, at 10-12.[17]  The state district court denied relief, finding that the OCCA "already ruled on" that claim on direct appeal and reasoning that <u>res judicata</u> barred further review of that claim.  Dkt. # 12-6, at 12-14.  The OCCA denied relief on postconviction appeal for the same reason.  Dkt. # 12-8, at 2, 4.

**2.    Analysis and conclusion**

In claim one, Jennings asserts, as she did on direct appeal, that the prosecutor committed misconduct during <u>voir dire</u> because the jewelry-theft hypothetical was an impermissible "stake-

---

[16] Rule 6, <u>Rules of the District Courts of Oklahoma</u>, Title 12, O.S. 2011, Ch. 2, App. (2022) provides, in relevant part, that the trial court "may outline the nature of the case, the issues of fact and law to be tried, and may then put to the jurors any questions regarding their qualifications to serve as jurors in the cause on trial," that "[t]he parties or their attorney shall be allowed to supplement such examination," and that attorneys "shall refrain from asking a juror how he would decide hypothetical questions involving law or facts."

[17] Jennings also argued, in her application for postconviction review, that appellate counsel provided ineffective assistance by framing the jewelry-theft hypothetical issue as a prosecutorial misconduct claim rather than arguing that the trial court abused its discretion by allowing the prosecutor to present the hypothetical.  Dkt. # 12-4, at 5.  The Court will address appellate counsel's alleged ineffectiveness on this point when it considers claim four.

out" question that was "designed to extract a promise from jurors to convict prior to hearing evidence or receiving instruction on the law." Id. at 5. In claim five, Jennings asserts, as she did on postconviction appeal, that the trial court abused its discretion when it permitted the prosecutor to use the jewelry-theft hypothetical over her objection and she appears to argue that the trial court should have sustained the objection because the prosecutorial misconduct was obvious and "tainted the whole jury pool." Id. at 23.[18]

Jennings contends that both claims implicate her Fourteenth Amendment right to due process and a fundamentally fair trial. As to claim one, prosecutorial misconduct does not implicate the Constitution unless the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). A federal court "ask[s] two questions to determine whether a defendant's trial was fundamentally unfair because of a prosecutor's comments: (1) were the prosecutor's comments improper, and (2) if so, did the improper comments likely affect the jury's verdict?" Lockett v. Dowling, No. 22-5027, 2022 WL3589139, at *3 (10th Cir. Aug. 23, 2022) (unpublished)[19] (citing United States v. Christy, 916 F.3d 814, 824 (10th Cir. 2019)). The second question requires a federal court to consider "all the surrounding circumstances, including the strength of the state's

---

[18] Respondent asserts that "although [claim five] should *technically* be procedurally barred, the OCCA's discussion of the trial court's discretion in Proposition I on direct appeal renders [claim five] exhausted." Dkt. # 12, at 86. For two reasons, the Court finds that claim five is properly before the Court and subject to review under § 2254(d)'s framework. First, Jennings exhausted claim five by presenting it to the OCCA through her postconviction appeal. Second, claim five is not procedurally barred because the OCCA prematurely adjudicated that claim on direct appeal and later concluded that res judicata barred relief on postconviction appeal. Dkt. # 12-1, at 2-3; Dkt. # 12-8, at 2, 4; see Cone v. Bell, 556 U.S. 449, 466 (2009) ("When a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review.").

[19] The Court cites this unpublished decision, and other unpublished decisions herein, as persuasive authority. FED. R. APP. P. 32.1(a); 10th Cir. R. 32.1(A).

case" to assess the impact a prosecutor's improper remarks may have had on the jury's verdict. Patton v. Mullin, 425 F.3d 788, 811 (10th Cir. 2005).

As to claim five, "[a] criminal defendant in a state court is guaranteed an 'impartial jury' by the Sixth Amendment as applicable to the States through the Fourteenth Amendment." Ristaino v. Ross, 424 U.S. 589, 595 n.6 (1976). "Principles of due process also guarantee a defendant an impartial jury." Id. Critically, "part of the guarantee of a defendant's right to an impartial jury is an adequate voir dire to identify unqualified jurors." Morgan v. Illinois, 504 U.S. 719, 729 (1992). "Voir dire examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges." Mu'Min v. Virginia, 500 U.S. 415, 431 (1991). But the Constitution does not mandate a specific method of voir dire examination; rather, it demands "only that the defendant be afforded an impartial jury." Morgan, 504 U.S. at 729. Thus, "the trial court retains great latitude in deciding what questions should be asked on voir dire." Mu'Min, 500 U.S. at 424.

On direct appeal, the OCCA determined that the jewelry-theft hypothetical was permissible under state law, that the prosecutor's use of the hypothetical was not improper, and that the trial court did not abuse its discretion by allowing the prosecutor to use the hypothetical. Dkt. # 12-1, at 2-3. While the OCCA did not explicitly discuss federal law when it evaluated Jennings's claim, the OCCA presumably concluded that the use of a permissible hypothetical during voir dire did not deprive Jennings of due process, deprive her of an impartial jury, or otherwise render her trial fundamentally unfair.[20] Affording Jennings's arguments the liberal construction she is entitled to

---

[20] This Court presumes that the OCCA adjudicated and rejected claims one and five as federal due process claims when it denied relief on the merits. See Richter, 562 U.S. at 98 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

as a pro se litigant, the Court discerns no legal or factual basis to conclude that the OCCA's decisions as to claims one and five are objectively unreasonable.  The OCCA reasoned that the jewelry-theft hypothetical was not improper because the prosecutor "used the challenged example as part of a broader discussion to assess whether the jurors could follow the law and convict someone for permitting a crime as opposed to actually committing it."  Dkt. # 12-1, at 2-3.  The OCCA further reasoned that the hypothetical "was designed to test the jurors' impartiality, not test their willingness to accept the State's theory of the case."  Id. at 3.  Based on its determination that the hypothetical was not improper, it was objectively reasonable for the OCCA to determine that Jennings was not deprived of due process or a fair trial.

Moreover, even accepting Jennings position that the hypothetical was improper, Jennings has not shown that the OCCA unreasonably rejected her claims of constitutional error.  As to claim one, Jennings has not shown that the challenged hypothetical likely affected the jury's verdict. The trial court instructed the jury that it could not convict Jennings unless the state proved, beyond a reasonable doubt, that (1) Jennings (2) "willfully or maliciously permitted" (3) "a willful or malicious" (4) "act of child sexual abuse" (5) "of a child under the age of eighteen" (6) "by John Mark Jennings."  Dkt. # 13-12, at 55.  The trial court further instructed the jury that the term "'[p]ermitted' means authorized or allowed for the care of the child by an individual when the person authorizing or allowing such care knew or reasonably should have known that the child would be placed at risk of sexual abuse."  Id.   And, as previously discussed, the state presented undisputed evidence at trial that John sexually abused D.J. for at least three years beginning when she was seven years old; that D.J. disclosed the abuse to Jennings twice during that time, and that Jennings did not report the abuse to any state authorities until a few weeks after D.J. disclosed the abuse to her therapist; that Jennings knew that DHS investigated and confirmed in 2001 that John

sexually abused J.J. (D.J.'s mother) for several years, resulting in court intervention and J.J.'s placement in foster care; and that DHS investigated sexual abuse allegations against John in 2011, when a doctor diagnosed D.J. (who was then either five or six years old) with a sexually transmitted disease.   On this record, Jennings cannot show that the jewelry-theft hypothetical, even if improper, likely affected the jury's verdict.  Similarly, as respondent contends, other than vaguely asserting that the jury pool was "tainted" by the trial court's failure to sustain her objection to the hypothetical, Jennings does not attempt to demonstrate, much less demonstrate, that the trial court's decision to overrule her objection to the hypothetical deprived her of an impartial jury. Dkt. # 1, at 23; Dkt. # 12, at 93.

Based on the foregoing, the Court finds that fairminded jurists would not disagree with the OCCA's decision as to claims one and five, concludes that § 2254(d) bars relief, and thus denies the petition as to claims one and five.

### B.       Admission of <u>res gestae</u>/other crimes evidence (claim two)

Next, Jennings contends, as she did on direct appeal, that the trial court abused its discretion, and thereby deprived her of her Fourteenth Amendment right to due process and a fundamentally fair trial, by erroneously admitting evidence of other crimes or bad acts.  Dkt. # 1, at 6-14.  Jennings specifically argues that the trial court permitted the state to present irrelevant and prejudicial evidence—through the testimony of J.J. and Michelle Brown (a former DHS investigator)—about John's past sexual abuse of J.J. and the 2001 DHS investigation of that abuse. <u>Id.</u> at 10-11.  Jennings argues that this evidence was neither admissible under Oklahoma's <u>res gestae</u> exception nor under Oklahoma statutes governing the admission of "other crimes" evidence. <u>Id.</u> at 10-14.  The OCCA rejected this claim, reasoning:

> The trial court did not abuse its discretion in admitting other crimes evidence relating to John Mark Jennings' molestation of J.J. pursuant to 12 O.S. 2011,

17

§ 2404(B). The total other crimes evidence was highly relevant to show [Jennings's] knowledge, absence of mistake and motive. This evidence was not unfairly prejudicial. The danger of unfair prejudice, confusion of the issues and misleading of the jury was minimized by the trial court's adept administration of the OUJI-CR 9-9 limiting instruction immediately before J.J.'s testimony. This same instruction was also provided to the jury in the written charge at the end of the trial. The trial court's findings that there was a visible connection between the offense charged and the prior offense sought to be proved; that the other crimes evidence was necessary to support the State's burden of proof, was not merely cumulative, and was not being admitted as subterfuge to show the jury that [Jennings] was a person who deserved to be punished; that the evidence of the other crimes was admitted solely for a limited purpose; and that the probative value of this evidence outweighed the danger of unfair prejudice to [Jennings] are fully supported by the record. See 12 O.S. 2011, § 2404(B); Thompson v. State, 2019 OK CR 3, ¶ 19, __ P.3d __; Vanderpool v. State, 2018 OK CR 39, ¶ 32, __P.3d __; Owens v. State, 2010 OK CR 1, ¶ 12, 229 P.3d 1261, 1266; Burks v. State, 1979 OK CR 10, ¶¶ 14-16, 594 P.2d 771, 774-75. Proposition II is denied.

Dkt. # 12-1, at 3-4.

Respondent contends that this Court should deny relief as to claim two because Jennings presented this claim on direct appeal, and reasserts it here, as a claim alleging a violation of state law. Dkt. # 12, at 28-30, 46. It is true that because the admission of evidence is a matter of state law, the allegedly erroneous admission of evidence ordinarily does not present a cognizable claim for federal habeas review. See McGuire, 502 U.S. at 67 (whether an evidentiary ruling was proper under state law "is no part of a federal court's habeas review of a state conviction"). And the Court agrees that Jennings's arguments focus extensively, if not exclusively, on state law, mentioning the Fourteenth Amendment only in her issue statement. Dkt. # 1, at 6-14. However, as respondent acknowledges, federal habeas relief may be available "if an alleged state-law error 'was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process.'" Hooks v. Workman, 689 F.3d 1148, 1180 (10th Cir. 2012) (quoting Revilla v. Gibson, 283 F.3d 1203, 1212 (10th Cir. 2002)); see also Williamson v. Parker, 705 Fed. App'x 677, 681 (10th Cir. 2017) ("Although federal habeas relief does not extend to the remedying of state law evidentiary errors, an exception applies when a state court admits evidence that is so

unduly prejudicial that it renders the trial fundamentally unfair."). Given Jennings's pro se status, the Court liberally construes claim two as alleging a due process violation.

But federal habeas courts "will not disturb a state court's admission of evidence of prior crimes, wrongs or acts unless the probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denies [the petitioner] due process of law." Knighton v. Mullin, 293 F.3d 1165, 1171 (10th Cir. 2002). In applying the fundamental-fairness analysis, a reviewing court must consider the admission of the challenged evidence in context of the entire trial record. Id. And "'because a fundamental-fairness analysis is not subject to clearly definable legal elements,' when engaged in such an endeavor a federal court must 'tread gingerly' and exercise 'considerable self-restraint.'" Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002) (alteration omitted) (quoting United States v. Rivera, 900 F.2d 1462, 1477 (10th Cir. 1990)). Having reviewed the trial transcripts and exhibits, the Court concludes that the OCCA neither misstated nor misapprehended the facts and that the OCCA reasonably applied federal law when it determined, considering the entire trial record, that the challenged evidence was properly admitted and that any potential prejudice or unfairness arising from its admission was adequately mitigated, if not cured, by the trial court's use of limiting instructions. Dkt. # 12-1, at 3-4.

Because the OCCA's determination as to the admission of the challenged evidence does not constitute an "extreme malfunction in the state criminal justice system," § 2254(d) bars relief. Richter, 562 U.S. at 102-103. The Court therefore denies the petition as to claim two.

## C.     Refusal to give requested jury instruction (claim three)

Jennings contends, as she did on direct appeal, that the trial court deprived her of her Fourteenth Amendment right to due process and a fundamentally fair trial when it denied her request to instruct the jury that, if convicted, she would be required to register as a sex offender.

Dkt. # 1, at 14-16.  Relying on its own prior decisions, the OCCA found that the trial court did not abuse its discretion in refusing to give the requested instruction because "registration under the Sex Offender Registration Act is not a salient feature of the law in sex crimes cases upon which the trial court is required to instruct."  Dkt. # 12-1, at 4-5.

Respondent contends that claim three involves a matter of state law that is not cognizable on habeas review and that even if Jennings states a cognizable federal claim, § 2254(d) bars relief. Dkt. # 12, at 46-51.  Liberally construing Jennings's argument as stating a cognizable due process claim, the Court agrees that § 2254(d) bars relief.  The Supreme Court has not clearly established a specific rule requiring a state court to instruct a jury that state law may impose a sex-offender registration requirement.  See, e.g., Bingley v. Whitten, No. CIV 16-439-RAW-KEW, 2020 WL 1305625, at *15 (E.D. Okla. Mar. 19, 2020) (unpublished) (noting that "there is no Supreme Court precedent which requires a jury instruction on sex offender registration"); Alexander v. Wilkerson, No. CIV-15-580-HE, 2015 WL 10372329, at *10 (W.D. Okla. Oct. 27, 2015) ("Petitioner points to no Supreme Court authority—and the undersigned finds none—that requires a trial court to instruct the jury about a defendant's requirement to register as a sex offender upon conviction."), report and recommendation adopted, No. CIV-15-580-HE, 2016 WL 750667 (W.D. Okla. Feb. 24, 2016).  Thus, the only clearly established federal law relevant to claim three is the "general rule [that] errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'"  Kalbaugh v. Martin, 809 F. App'x 481, 490 (10th Cir. 2020) (quoting Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997)).  "And '[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'"  Id. (quoting Henderson v. Kibbe, 431 U.S. 145, 155 (1977)).  As permitted by Oklahoma law, the jury was

charged with affixing punishment and was instructed that "the crime of Permitting Child Sexual Abuse is punishable by imprisonment in the Department of Corrections not exceeding life or by imprisonment in a county jail not exceeding one (1) year, or by a fine of not less than Five Hundred Dollars ($500.00) nor more than Five Thousand Dollars ($5,000.00), or by both such fine and imprisonment." Dkt. 13-12, at 57. After determining that Jennings knew or should have known that D.J. was at risk of being sexually abused by John and hearing undisputed evidence that John did, in fact, sexually abuse D.J., the jury affixed punishment at fourteen years' imprisonment. Id. at 63.

On the record presented, this Court finds no legal or factual support for Jennings's claim that failing to instruct the jury that she would be required to register as a sex offender deprived her of a fundamentally fair trial. The Court thus concludes that § 2254(d) bars relief and denies the petition as to claim three.

### D.   Ineffective assistance of appellate counsel (claim four)

Jennings claims, as she did on postconviction review, that she was deprived of her Sixth Amendment right to the effective assistance of appellate counsel. Dkt. # 1, at 16-23; Dkt. # 12-4, at 4-10.[21] To establish a Sixth Amendment violation, a defendant must show deficient performance and resulting prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Smith v. Robbins, 528 U.S. 259, 285 (2000) (applying Strickland in context of ineffective-

---

[21] In state court and in this habeas proceeding, Jennings also asserts that trial counsel provided ineffective assistance. Dkt. # 1, at 16-23. Respondent contends that the ineffective-assistance-of-trial-counsel claim is procedurally barred. Dkt. # 12, at 66. But it appears that the state courts effectively considered the merits of that claim when they evaluated Jennings's ineffective-assistance-of-appellate-counsel claim. Dkt. # 12-6, at 3-12. The Court likewise will consider the merits of the ineffective-assistance-of-trial-counsel claim in evaluating whether appellate counsel provided ineffective assistance by omitting that claim from Jennings's direct appeal.

assistance-of-appellate-counsel claim). "[T]he proper standard for attorney performance is that of reasonably effective assistance." Id. Thus, to establish that trial counsel performed deficiently, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. To establish prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. When an appellant alleges ineffective assistance of appellate counsel based on the omission of certain issues, the appellant must show (1) "that a reasonably competent attorney" would have determined that the omitted "nonfrivolous issue was clearly stronger than issues that counsel did present," and (2) "a reasonable probability that, but for his counsel's unreasonable failure" to raise the omitted issue or issues, the defendant "would have prevailed on his appeal." Id. at 285-89. In this context, reviewing courts necessarily must "look to the merits of" the omitted issue or issues. Miller v. Mullin, 354 F.3d 1288, 1298 (10th Cir. 2004) (quoting Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003)). And, "[i]f the issue is meritless, its omission will not constitute deficient performance." Cargle, 317 F.3d at 1202.

Jennings appears to allege in claim four that appellate counsel performed deficiently and prejudicially (1) by failing to argue that trial counsel provided ineffective assistance, (2) by failing to argue that the trial court abused its discretion by allowing the prosecutor to present the jewelry-theft hypothetical during voir dire, and (3) by conceding that the evidence was sufficient to convict Jennings. Id. at 16-18. Applying Strickland, the state district court thoroughly evaluated the ineffective-assistance-of-appellate-counsel claim and concluded that Jennings did not demonstrate deficient performance or resulting prejudice. Dkt. # 12-6, at 3-12. The OCCA agreed. Dkt. # 12-8, at 1-5.

Respondent argues that § 2254(d) bars relief as to claim four because it was objectively reasonable for the OCCA to reject the Sixth Amendment claim.  For two reasons, the Court agrees. First, because the OCCA applied <u>Strickland</u>, Jennings cannot show that the OCCA's adjudication of her ineffective-assistance-of-appellate-counsel claim resulted in a decision that is contrary to clearly established federal law.  Second, on careful consideration of the parties' arguments, the record, and applicable law, the Court finds no legal or factual support for Jennings's apparent argument that the OCCA's adjudication of the Sixth Amendment claim either involved an unreasonable application of <u>Strickland</u> or is based on an unreasonable determination of the facts presented in state court.  <u>See</u> 28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 101 (reiterating that the question on habeas review under § 2254(d) "is whether the state court's application of the <u>Strickland</u> standard was unreasonable").  To explain why, the Court briefly addresses each of appellate counsel's alleged deficiencies.

### 1.    Trial counsel's alleged ineffectiveness

Jennings alleges appellate counsel should have argued that trial counsel was ineffective for several reasons.  Dkt. # 1, at 17-21.  Specifically, Jennings alleges that trial counsel failed to prove that Jennings had "no prior charge for this allegation," failed to ensure that that extensive and prejudicial evidence regarding John's prior sexual abuse of J.J. was kept from the jury, failed to impeach the state's witnesses, and failed to inform the jury that D.J. was allegedly born with a sexually transmitted disease.  <u>Id.</u> at 18-21.  The state district court thoroughly addressed each of these alleged deficiencies, found no merit to Jennings's claim that trial counsel performed deficiently and prejudicially, and thus concluded that appellate counsel did not perform deficiently or prejudicially by failing to argue trial counsel's ineffectiveness on direct appeal.  Dkt. # 12-6, at 8-12, 14.  As demonstrated by respondent's discussion of trial counsel's alleged errors, Jennings

claim that trial counsel provided ineffective assistance lacks merit.  Dkt. # 12, at 70-82.  Thus, Jennings has not shown that it was objectively unreasonable for the OCCA to decide that appellate counsel did not perform deficiently or prejudicially by omitting this claim.

### 2.   **Voir dire hypothetical**

Jennings alleges that appellate counsel improperly framed her challenge to the voir dire hypothetical as a prosecutorial misconduct claim (the claim she reasserts here as claim one) and that appellate counsel should have framed that challenge by arguing that the trial court abused its discretion when it permitted the prosecutor to present the hypothetical to the jury panel (as she does here in claim five).  Dkt. # 1, at 17-18.  But, as previously discussed, the OCCA rejected Jennings's prosecutorial misconduct claim, as it was raised on direct appeal, and rejected her related abuse-of-discretion claim, as Jennings alleges it should have been raised on direct appeal, for the same reason:  the OCCA found the allegedly improper voir dire hypothetical was not improper at all and that the use of the hypothetical thus did not deprive her of a fundamentally fair trial.  Dkt. # 12-1, at 2-3.  Thus, Jennings cannot show that it was objectively unreasonable for the OCCA to find no deficient performance or resulting prejudice as to appellate counsel's presentation of the challenge to the voir dire hypothetical.

### 3.   **Concession regarding the sufficiency of the evidence**

Lastly, Jennings alleges appellate counsel "failed to properly represent" her because appellate counsel stated in the conclusion section of Jennings's state appeal brief that Jennings "acknowledges that the evidence in this case was sufficient as a matter of law to support her conviction for the offense of permitting child abuse."  Dkt. # 1, at 17; see Dkt. # 12-2, at 33.  The state district court found that, considering this statement in context, Jennings could not show that appellate counsel performed deficiently or prejudicially by acknowledging the sufficiency of the

evidence and arguing that the errors raised on direct appeal primarily deprived Jennings of a fair sentence.  Dkt. # 12-6, at 6.  The state district court further reasoned that, to the extent Jennings suggested appellate counsel performed deficiently and prejudicially by not challenging the sufficiency of the evidence, there was no probability of a different outcome on appeal because the OCCA would have rejected that challenge.  Id. at 6-8.  In rejecting Jennings's ineffective-assistance-of-appellate-counsel claim, the OCCA apparently agreed with the state district court's reasoning.  And, in this proceeding, Jennings has not shown that the OCCA's decision is objectively unreasonable.

### 4.      Conclusion as to claim four

Based on the foregoing, the Court concludes that § 2254(d) bars relief as to the ineffective-assistance-of-appellate-counsel claim and thus denies the petition as to claim four.

## II.      Claim that is procedurally defaulted (claim six)

In claim six, Jennings asserts that the prosecutor committed misconduct by intentionally lying about the images depicted on certain trial exhibits.  More specifically, Jennings alleges that the prosecutor "submitted into evidence a set of slides from the childhood of John Jennings and told the jury that those slides contained nude pictures of D.J., the defendant's granddaughter, however that was an intentional lie to the jury."  Dkt. # 1, at 24.  The OCCA agreed with the state district court's conclusion that Jennings waived this claim by failing to raise it on direct appeal. Dkt. # 12-6, at 13; Dkt. # 12-8, at 4.

Respondent contends that Jennings procedurally defaulted this claim and argues that Jennings has not made any showings necessary to overcome the procedural default of this claim. Dkt. # 12, at 95-106.  The Court agrees.  As previously discussed, the procedural default doctrine bars habeas review when a state court declines to consider the merits of a federal claim based on

an independent and adequate state procedural rule.  <u>Davila</u>, 582 U.S. at 527.  The OCCA routinely applies its waiver rule to procedurally bar claims that could have been, but were not, raised on direct appeal.  See <u>Smith v. Workman</u>, 550 F.3d 1258, 1274 (10th Cir. 2008) ("[T]his court has found Oklahoma's bar of claims not raised on direct appeal to be independent and adequate.").  And Jennings has not shown that she can overcome the procedural default of claim six.  Even generously construing the petition, Jennings only discernible argument is that appellate counsel was ineffective for failing to raise this prosecutorial misconduct claim.  Dkt. # 1, generally.  In some cases, ineffective assistance of counsel can establish cause for a procedural default.  See <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000) (discussing "what constitutes 'cause' to excuse a procedural default" and noting that "in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice").  But this is not one of those cases.  To serve as cause to overcome a procedural default, counsel's "assistance must have been so ineffective as to violate the Federal Constitution." <u>Id.</u>  And,  as just discussed, Jennings has not shown that appellate counsel provided constitutionally deficient assistance.

Because Jennings procedurally defaulted claim six and has not made the showings necessary to overcome that procedural default, the Court denies the petition as to claim six.

### CONCLUSION

For the reasons stated, the Court concludes that Jennings has not shown that she is in state custody in violation of federal law.  The Court therefore denies her petition for writ of habeas corpus.   In addition, the Court finds that reasonable jurists would not debate this Court's assessment of Jennings's constitutional claims or its determination that Jennings procedurally defaulted claim six and thus declines to issue a certificate of appealability as to any issues raised in the petition.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

**IT IS THEREFORE ORDERED** that the Clerk of Court shall note the substitution of Tamika White, Warden, in place of Aboutanaa Elhabti as party respondent.

**IT IS FURTHER ORDERED** that the petition under 28 U.S.C. § 2254 for writ of habeas corpus by a person in state custody (Dkt. # 1) is **denied**; a certificate of appealability is **denied**, and a separate judgment shall be entered in this matter.

**DATED** this 8th day of September, 2023.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE